**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 10-cv-02692-REB

ROBERT WAYNE ROBINSON,

      Applicant,

v.

JOHN DAVIS, Warden, and
JOHN W. SUTHERS, the Attorney General of the State of Colorado,

      Respondents.

---

## ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS

---

**Blackburn, J**.

    This matter is before me on the *pro se* amended Application for a Writ of Habeas

Corpus Pursuant to 28 U.S.C. § 2254 ("Application") [#10][1] filed December 28, 2010, by

Applicant Robert Wayne Robinson.  Respondents answered the Application  [#39], and

Applicant filed a traverse [#44].  After reviewing the pertinent portions of the record in

this case, including the Application, the Answer, the Traverse, and the state court

record, I conclude that the Application should be denied.

## I.  BACKGROUND

    On September 1, 2004, Applicant was convicted by a jury in Douglas County

District Court Case No. 02CR382 of aggravated robbery, criminal mischief, menacing,

---

[1]"[# 10]" is an example of the convention I use to identify the docket number assigned to a specific paper by the court's electronic case filing and management system (CM/ECF). I use this convention throughout this order.

third degree assault, and resisting arrest.  The following statement of facts is taken from

the opinion of the Colorado Court of Appeals in Applicant's direct appeal.

> Douglas County sheriff officers and mall security chased [Applicant] after
> he robbed the manager of a fine jewelry store.  An officer was injured in
> the process.  At the time of his arrest, [Applicant] had in his possession
> $136 in cash, $18,000 worth of diamond tennis bracelets, and a toy gun
> wrapped in black electrical tape.

*People v. Robinson*, No. 05CA0252 (Colo. App. Aug. 30, 2007) (unpublished opinion)

[#14-3, at 1].  Following Applicant's jury trial, he was convicted by the state trial court of

three habitual criminal counts.  Applicant was sentenced to sixty-four years of

imprisonment in the Colorado Department of Corrections.

After the Colorado Court of Appeals affirmed Applicant's convictions and

sentence on August 30, 2007, Applicant filed a petition for certiorari review, which the

Colorado Supreme Court denied on December 31, 2007.

Applicant filed a motion for post-conviction relief pursuant to Colo. Crim. P. Rule

35(c), which was denied by the trial court.  The Colorado Court of Appeals affirmed the

trial court's order in *People v. Robinson*, No. 08CA2007 (Colo. App. Aug. 5, 2010)

(unpublished opinion) [#14-8].  Applicant filed a petition for certiorari review, which the

Colorado Supreme Court denied on February 14, 2011.

Applicant asserts ten claims in the amended Application:

> 1.  He was denied reasonable access to an adequate law
> library and, therefore, was unable to participate meaningfully
> in his defense or to represent himself.
>
> 2.  The state trial court's finding of habitual criminality and
> imposition of an enhanced sentence denied him the Sixth
> Amendment right to trial by jury.
>
> 3.  The trial court erred, and trial counsel was ineffective, in

failing to ensure that he received a proper advisement concerning his right to testify at trial and at the subsequent habitual criminal proceeding.

4.  The trial court erred in denying Applicant's requests to represent himself when conflicts arose with appointed counsel.

5.  The trial court erred in not allowing Applicant to present his plea of not guilty by reason of insanity.

6.  The state trial and appellate courts erred in rejecting Applicant's claims regarding racial discrimination in jury selection.

7.  Trial counsel was ineffective in failing to discover malicious prosecution and prosecutorial misconduct in the charging process.

8.  Applicant was denied his constitutional right to counsel at his first appearance before a judicial officer.

9.  Trial counsel was ineffective because he conspired with the prosecutor to withhold exculpatory evidence and to assist law enforcement witnesses in committing perjury.

10.  Applicant's right to confront his accusers was violated because evidence was admitted from witnesses who were unavailable to testify.

I have dismissed claims four, five, seven, ten, and part of claim nine[2] as procedurally barred.  [#24].   I address Applicant's remaining claims on the merits under AEDPA's deferential standard of review, as discussed below.

## II.  STANDARD OF REVIEW

I must construe the Application and other papers filed by Applicant liberally

---

[2] I concluded that Applicant procedurally defaulted his allegations in claim nine that the prosecution withheld evidence that psychologists, instead of psychiatrists, were used to conduct competency and sanity evaluations. [#24].

because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991).  However, I may not be an advocate for a pro se litigant. *See Hall*, 935 F.2d at 1110.

Title 28 U.S.C. § 2254(d) provides that a writ of habeas corpus may not be issued with respect to any claim that was adjudicated on the merits in state court unless the state court adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).  Applicant bears the burden of proof under § 2254(d).  *See Woodford v. Visciotti*, 537 U.S. 19, 25 (2002) (per curiam).

A claim may be adjudicated on the merits in state court even in the absence of a statement of reasons by the state court for rejecting the claim.  *Harrington v. Richter*, 131 S.Ct. 770, 784–85 (2011).  In particular, "determining whether a state court's decision resulted from an unreasonable legal or factual conclusion does not require that there be an opinion from the state court explaining the state court's reasoning." *Id.* at 784.  Furthermore, "[w]hen a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Id.* at 784–85.  Even "[w]here a state court's decision is unaccompanied by an explanation, the habeas petitioner's burden still must be met by showing there was no reasonable basis for the state court to deny relief." *Id.* at 784.  In other words, I

4

"owe deference to the state court's result, even if its reasoning is not expressly stated." *Aycox v. Lytle*, 196 F.3d 1174, 1177 (10th Cir. 1999). Therefore, I "must uphold the state court's summary decision unless [my] independent review of the record and pertinent federal law persuades [me] that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented." *Id.* at 1178. "[T]his 'independent review' should be distinguished from a full de novo review of the petitioner's claims." *Id.*

I review claims of legal error and mixed questions of law and fact pursuant to 28 U.S.C. § 2254(d)(1). *See Cook v. McKune*, 323 F.3d 825, 830 (10th Cir. 2003). The threshold question I must answer under § 2254(d)(1) is whether Applicant seeks to apply a rule of law that was clearly established by the Supreme Court at the time his conviction became final. *See Williams v. Taylor*, 529 U.S. 362, 390 (2000). Clearly established federal law "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Id.* at 412. Furthermore,

> clearly established law consists of Supreme Court holdings in cases where the facts are at least closely-related or similar to the case sub judice. Although the legal rule at issue need not have had its genesis in the closely-related or similar factual context, the Supreme Court must have expressly extended the legal rule to that context.

*House v. Hatch*, 527 F.3d 1010, 1016 (10th Cir. 2008). If there is no clearly established federal law, that is the end of my inquiry pursuant to § 2254(d)(1). *See id.* at 1018. If a clearly established rule of federal law is implicated, I must determine whether the state court's decision was contrary to or an unreasonable application of that clearly established rule of federal law. *See Williams*, 529 U.S. at 404–05.

5

A state-court decision is contrary to clearly established federal law if: (a) "the state court applies a rule that contradicts the governing law set forth in Supreme Court cases"; or (b) "the state court confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different from [that] precedent." *Maynard [v. Boone]*, 468 F.3d [665,] 669 [(10th Cir.2006)] (internal quotation marks and brackets omitted) (quoting *Williams*, 529 U.S. at 405). "The word 'contrary' is commonly understood to mean 'diametrically different,' 'opposite in character or nature,' or 'mutually opposed.' " *Williams*, 529 U.S. at 405 (citation omitted).

A state court decision involves an unreasonable application of clearly established federal law when it identifies the correct governing legal rule from Supreme Court cases, but unreasonably applies it to the facts. *Id.* at 407–08. Additionally, we have recognized that an unreasonable application may occur if the state court either unreasonably extends, or unreasonably refuses to extend, a legal principle from Supreme Court precedent to a new context where it should apply.

*House*, 527 F.3d at 1018.

My inquiry pursuant to the "unreasonable application" clause is an objective inquiry. *See Williams*, 529 U.S. at 409–10. "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather that application must also be unreasonable." *Id.* at 411. "[A] decision is 'objectively unreasonable' when most reasonable jurists exercising their independent judgment would conclude the state court misapplied Supreme Court law." *Maynard*, 468 F.3d at 671. In addition,

evaluating whether a rule application was unreasonable requires considering the rule's specificity. The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations. [I]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court.

*Richter*, 131 S.Ct. at 786 (internal quotation marks omitted). In conducting this analysis,

6

the Court "must determine what arguments or theories supported or . . . could have

supported[ ] the state court's decision" and then "ask whether it is possible fairminded

jurists could disagree that those arguments or theories are inconsistent with the holding

in a prior decision of [the Supreme] Court." *Id.* Moreover, "review under

§ 2254(d)(1) is limited to the record that was before the state court that adjudicated the

claim on the merits." *Cullen v. Pinholster*, 131 S.Ct. 1388, 1398 (2011).

Under this standard, "only the most serious misapplications of Supreme Court

precedent will be a basis for relief under § 2254." *Maynard*, 468 F.3d at 671; *see also*

*Richter*, 131 S.Ct. at 786 (stating that "even a strong case for relief does not mean the

state court's contrary conclusion was unreasonable").

> As a condition for obtaining habeas corpus from a federal court, a state
> prisoner must show that the state court's ruling on the claim being
> presented in federal court was so lacking in justification that there was an
> error well understood and comprehended in existing law beyond any
> possibility for fairminded disagreement.

*Richter*, 131 S.Ct. 786–87.

I review claims asserting factual errors pursuant to 28 U.S.C. § 2254(d)(2). *See*

*Romano v. Gibson*, 278 F.3d 1145, 1154 n. 4 (10th Cir. 2002). Section 2254(d)(2)

allows me to grant a writ of habeas corpus only if the relevant state court decision was

based on an unreasonable determination of the facts in light of the evidence presented

to the state court. Pursuant to § 2254(e)(1), I must presume that the state court's

factual determinations are correct, and Applicant bears the burden of rebutting the

presumption by clear and convincing evidence. "The standard is demanding but not

insatiable . . . [because] '[d]eference does not by definition preclude relief.'" *Miller–El v.*

*Dretke*, 545 U.S. 231, 240 (2005) (quoting *Miller–El v. Cockrell*, 537 U.S. 322, 340

7

(2003)).

If a claim was not adjudicated on the merits in state court, and if the claim also is not procedurally barred, I must review the claim de novo, and the deferential standards of § 2254(d) do not apply. *See Gipson v. Jordan*, 376 F.3d 1193, 1196 (10th Cir. 2004).

## III.  MERITS OF THE CLAIMS

### A. Claim 1

Applicant first claims that he was deprived of his constitutional right of access to the courts when he was denied reasonable access to an adequate law library at the Douglas County detention facility and, as a result, was unable to participate meaningfully in his defense or to represent himself.

"[T]he fundamental constitutional right of access to the courts requires prison authorities to . . . provid[e] prisoners with adequate law libraries or adequate assistance from persons trained in the law." *Bounds v. Smith*, 430 U.S. 817, 828 (1977). Appointing legal counsel is a constitutionally acceptable alternative to a prisoner's demand to access a law library.  *See Lewis v. Casey*, 518 U.S. 343, 350-51 (1996). Furthermore, "[w]hen a prisoner voluntarily, knowingly and intelligently waives his right to counsel in a criminal proceeding, he is not entitled to access to a law library or other legal materials."  *U.S. v. Cooper*, 375 F.3d 1041, 1052 (10th Cir. 2004) (citing *United States v. Taylor*, 183 F.3d 1199, 1205 (10th Cir. 1999)).

On direct appeal, the Colorado Court of Appeals rejected Applicant's claim based on the following reasoning:

> . . . [W]hen a defendant is represented by counsel or is proceeding pro se with standby or advisory counsel available to provide legal assistance if needed, such resources are considered to be the functional

8

equivalent of a law library or alternative sources of legal knowledge. *People v. Vialpando*, 954 P.2d 617, 620 (Colo. App. 1997).

Because during the majority of these proceedings defendant was represented by both the public defender's office and ADC [alternate defense counsel], and because during the time when defendant chose to waive counsel and represent himself he was assisted by advisory counsel, we conclude defendant was not denied his right of access to the courts. [citing *United States v. Taylor*].

[#14-3, at 5-6].

The state appellate court's factual findings that Applicant was represented by counsel or was assisted by advisory counsel throughout his criminal proceeding in the state trial court are presumed correct and are supported by the state court record.[3] *See* 28 U.S.C. § 2254(e)(1). Applicant has not rebutted these findings with any clear and convincing evidence to the contrary. *Id.* I find that the Court of Appeals' determination that Applicant was not denied his constitutional right of access to the courts is reasonable in light of the evidence presented in the state court proceeding and is a fair application of the Supreme Court's decisions in *Bounds* and *Lewis.* Applicant, thus, is not entitled to federal habeas relief for his first claim.

## B. Claim 2

For his second claim, Applicant asserts that the state trial court's finding of habitual criminality and imposition of an enhanced sentence denied him the Sixth Amendment right to trial by jury.

In *Apprendi v. New Jersey*, 530 U.S. 455, 490 (2000), the Supreme Court held

---

[3] *See* State Court R., pldg. file vol. 1, 7/2/02 and 1/27/04 minute orders; Hrg. Tr. 9/26/03 at 3-10; Hrg. Tr. 9/29/03 at 2-7, 9-13; Hrg. Tr. 10/16/03 at 5-18; 27-31; 33-52; Hrg. Tr. 11/10/03 at 2-4;  Hrg. Tr. 12/1/03 at 2-4.

that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." The *Apprendi* Court's exclusion of prior convictions from the general rule was based on the Supreme Court's decision in *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), in which the Court held that recidivism need not be charged in an indictment in order for a judge to use prior convictions to enhance a defendant's sentence. *Apprendi*, 530 U.S. at 487-88. The *Apprendi* Court mentioned the possibility that *Almendarez-Torres* may have been "incorrectly decided." *Apprendi*, 530 U.S. at 489. However, the Supreme Court has not overruled *Almendarez-Torres*. *See e.g. United States v. Booker*, 543 U.S. 220, 244 (2005) (reaffirming the recidivism exception announced in *Apprendi* ).

The Colorado Court of Appeals rejected Applicant's claim pursuant to the prior conviction exception of *Apprendi* and recognized that the exception remains valid. [#14-3, at 8-9, citing *Booker*]. The state appellate court's determination that Applicant was not entitled to a jury trial on the habitual criminal charges was consistent with applicable Supreme Court law. Applicant, therefore, cannot prevail on his second claim.

## C.  Claim 3

In claim three, Applicant asserts that the trial court erred, and his counsel was ineffective, in failing to ensure that he was advised properly concerning his right to testify at trial and at the subsequent habitual criminal proceeding. Applicant cites

*People v. Curtis*, 681 P.2d 504 (Colo. 1984)[4] in support of his claim.

A criminal defendant has a constitutional right to testify in his own behalf at trial. *Rock v. Arkansas*, 483 U.S. 44, 49-52 (1987).  However, the Supreme Court has never held that the trial court is obliged to advise a criminal defendant concerning his right to testify.  Under the AEDPA, the absence of any controlling Supreme Court law ends my inquiry on federal habeas review and Applicant's claim alleging error by the trial court fails.  *See House*, 527 F.3d at 1018.  Applicant's assertion that the trial court's advisement failed to comply in some way with state law cannot be the basis for federal habeas relief.  *See Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991).

The Tenth Circuit does not require the trial court to inquire into a defendant's decision whether to testify, absent a showing that the defendant did not make the decision not to testify, or that defendant and his attorney disagreed on whether the defendant should take the stand.  *See United States v. Janoe*, 720 F.2d 1156, 1161 (10th Cir. 1983); *Turley v. Estep*, 375 F. App'x 867, 870 (10th Cir. 2010) (unpublished) (denying federal habeas relief for petitioner's claim that he was not advised adequately about the considerations relating to his decision whether to testify at trial, citing *Janoe*).

To prevail on his claim that trial counsel's assistance in conjunction with the trial court's advisement of rights was constitutionally ineffective, Applicant must show that:

---

[4] In *People v. Curtis*, the Colorado Supreme Court held that a defendant's waiver of his constitutional right to testify must be "voluntary, knowing and intentional."  681 P.2d 504, 514 (Colo.1984). Under *Curtis*, if a defendant wishes to waive his right to testify, a trial court must – on the record and out of the presence of the jury – advise the defendant of his rights and obtain a waiver of the right to testify. *Id.* at 514–15.

(1) counsel's legal representation fell below an objective standard of reasonableness; and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984).  Judicial scrutiny of counsel's performance is highly deferential.  *Id.* at 689.  Counsel's decisions are presumed to represent "sound trial strategy;" "[f]or counsel's performance to be constitutionally ineffective, it must have been completely unreasonable, not merely wrong." *Boyd v. Ward*, 179 F.3d 904, 914 (10th Cir. 1999) (internal quotations omitted).  Prejudice exists when there is a reasonable probability that, but for counsel's defective representation, the result of the proceeding would have been different.  *Strickland*, 466 U.S. at 693.  I need not address both prongs of the *Strickland* inquiry if Applicant's claim fails on one.  *Id.*  at 697.

The Colorado Court of Appeals addressed Applicant's claim as it pertained to the lack of advisement at his habitual criminal proceeding, but did not address the claim as it related to his jury trial.  Accordingly, I review Applicant's claim challenging the advisement he received at his jury trial de novo.  *See Gipson*, 376 F.3d at 1196.

### 1. *advisement concerning right to testify at jury trial*

Applicant argued to the state appellate court in his post-conviction proceeding that the advisement of rights he received from the trial court at his jury trial was inadequate because the court did not advise him how his testimony would impact the substantive evidence at his habitual trial.  [#14-6, at 13-14].  Applicant asserts that trial counsel was ineffective in failing to object to the improper *Curtis* advisement.  [*Id.* at 14-15].

I have reviewed the state court record, which reflects that the state trial court advised Applicant on the record of his right to testify and permitted him time to confer

with his attorney about the decision. (*See* State Court R., Trial Tr. 8/31/04, at 221-243;

Trial Tr. 9/1/04 at 5-19). There is nothing in the state court proceedings to indicate that

Applicant and his counsel disagreed about whether Applicant should testify or that

Applicant's decision not to testify was coerced by counsel. Furthermore, Applicant has

not alleged any facts in his Application to show that he did not reach the decision of his

own accord or that counsel interfered with his decision. Absent such circumstances, I

find that, even if Applicant's claim does not fail for lack of clearly established Supreme

Court law, Applicant has not shown that the trial court had a federal constitutional

obligation to advise him of his right to testify in his own defense, *see Janoe*, 720 F.2d at

1161, or that his counsel engaged in conduct that deprived him of his right to testify.

*See Cannon v. Mullin*, 383 F.3d 1152, 1171 (10th Cir. 2004) (allegations that defense

counsel prevented defendant from testifying in his own defense satisfy first prong of

*Strickland*).

Moreover, Applicant's assertion that the trial court did not properly advise him

about how his testimony during the jury trial might affect the substantive evidence at his

habitual trial cannot be attributed to any deficient performance by defense counsel.

Under Colorado law, the state trial court "may not use a defendant's admissions of prior

felonies, elicited during the trial phase, as evidence of the existence of those felonies

during the sentencing phase." *People v. Ziglar,* 45 P.3d 1266, 1269 (Colo. 2002) (citing

COLO.REV.STAT. § 16-13-103(5)(b)). As such, the trial court's advisement comported

with state law, and defense counsel's failure to object did not constitute substandard

legal performance. I, therefore, find that counsel's representation of Applicant during

the advisement did not implicate Applicant's Sixth Amendment rights. *See Jenner v.*

13

*Class*, 79 F.3d 736, 740 (8th Cir. 1996) (given state supreme court's ruling that applicant was not entitled to an accomplice instruction under state law, there was no basis for concluding that defense counsel was deficient in not proposing instruction).

Applicant cannot prevail on his claim for habeas relief concerning the advisement of rights he received at his jury trial.

### 2. *Advisement at habitual criminal proceeding*

Applicant next asserts that the trial court erred, and counsel was ineffective, in failing to ensure that he received an advisement concerning his right to testify during the habitual criminal proceeding. Applicant argued to the Colorado Court of Appeals in the state post-conviction proceeding that he "did not know he could testify during [the] habitual trial because he was not asked or advised", and that he "would have testified" if given the opportunity. [#14-6, at 13].

The state appellate court concluded that, having advised Applicant about his right to testify during the jury trial proceeding, the state trial court was not obligated to advise Applicant a second time during the habitual criminal proceeding. [#14-8, at 6]. The state appellate court thus determined that counsel's performance in failing to assure that the trial court gave Applicant a second *Curtis* advisement could not have been constitutionally ineffective. [(*See id.*)].

I find that the Colorado Court of Appeals' determination of Applicant's claim was not contrary to, or an unreasonable application of *Strickland*. As discussed previously, Applicant has failed to demonstrate any circumstances that would have triggered the trial court's duty to advise Applicant of his constitutional right to testify in his own defense. *See Janoe*, 720 F.2d at 1161. Additionally, state law holds that Applicant was

14

not entitled to a second advisement of rights at his habitual criminal trial.  *See Ziglar*, 45

P.3d at 1272 ("[W]e find no justification for imposing a requirement upon trial courts to

give an amended advisement concerning the right to testify during the habitual phase.").

Trial counsel, therefore, did not render deficient performance in failing to object to the

lack of advisement at the habitual trial.  Furthermore, under the prejudice prong of the

*Strickland* inquiry, Applicant does not identify what testimony he would have provided to

contradict the documentary evidence presented by the prosecution at his habitual trial,

which the trial court found sufficient to establish his three prior felony convictions.  (*See*

State Court R., Trial Tr. 12/21/04).

In sum, Applicant has failed to demonstrate an entitlement to federal habeas

relief for his third claim.

## D.  Claim 6

In claim six, Applicant asserts that the state trial and appellate courts erred in

rejecting his claims regarding racial discrimination in jury selection.  The Colorado Court

of Appeals declined to address Applicant's claim on direct appeal because Applicant did

not comply with §13-71-139, C.R.S. (2010) (providing that a party may file a written

motion, prior to the swearing in of the jury, challenging the composition of the juror pool,

accompanied by one or more affidavits specifying the supporting facts and demographic

data).  Applicant then reframed the issue in his motion for post-conviction relief,

asserting that trial counsel was ineffective in failing to determine that there exists a

systematic exclusion of African Americans from the jury pools in Douglas County and

for not preserving the issue for appeal.  (*See* State Court R., pldg. file vol. 3, at 502).

The trial court denied the claim, finding that Applicant "failed to allege adequate factual

15

or legal grounds for relief." (*Id.*, pldg. file vol. 4, at 712). Because Applicant exhausted claim six in the state courts as an ineffective assistance of counsel claim, I will construe his claim as such in this proceeding.

Before trial, Applicant filed a pro se "Motion For Change Of Venue" requesting that the location of his trial be changed to a county, such as Denver, "where a fair and impartial jury can be guaranteed, by a multi-racial jury pool," and asserting that "Defendant is African-American and [he] believes that a jury of his peers is non-existent in Douglas County." (State Court R., pldg. file vol. 1, at 102). After counsel was appointed, Applicant continued to challenge the racial makeup of Douglas County, from which the jury pool was drawn, until the eve of trial. (*See id.*, Hrg. Tr. 8/27/04 at 115-118, 148). During voir dire, Applicant requested individual voir dire to question jurors "individually as to their issues on race so that no one is embarrassed." (*Id.*, Trial Tr. 8/30/04 at 24-25). At Applicant's request, trial counsel also asked for more than thirty minutes to question the potential jurors, and again requested that the motion for change of venue be granted. (*Id.* at 59-62).

The trial court issued the following ruling on Applicant's motion:

[T]he evidence speaks for itself with the composition . . . of the jury. The Court does not recall – does not – well, pardon me. The Court finds that there is – does appear that there are no African Americans on the jury. Mr. Nietes, I believe, is a person of color. He is on the jury.

But the issue in this case is whether . . . the jury is fair and impartial and whether the People have proven the charges against him beyond a reasonable doubt, and the folks that have been chosen in this case by counsel after voir dire are charged with that task. There is no requirement that the jury be composed of a percentage of a certain particular racial population. And the Court will find that and deny the motion for change of venue.

> And the motion to dismiss the case in this matter, with respect to that, the Court does note – and the Court watched Mr. Robinson.  The Court notes that Mr. Robinson has, in fact, participated in the jury selection process, has spoken to counsel during the process, has been involved in – engaged in the selection or deselection, if you would, of prospective jurors.

(State Court R., Trial Tr. 8/30/04, at 61-62).

The Sixth Amendment requires that petit juries in criminal trials be "drawn from a fair cross section of the community."  *Taylor v. Louisiana*, 419 U.S. 522, 527 (1975). This does not guarantee that a petit jury will be "of any particular composition." *Id.* at 538.  Instead, it requires only that the pools of names "from which [petit] juries are drawn must not systematically exclude distinctive groups in the community and thereby fail to be reasonably representative thereof." *Id.* at 538.  In order to establish a prima facie violation of the Sixth Amendment "fair cross-section" requirement, a criminal defendant must show:

> (1) that the group alleged to be excluded is a "distinctive" group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury-selection process.

*Duren v. Missouri,* 439 U.S. 357, 364 (1979).  A habeas petitioner cannot rely on the racial makeup of a single  jury pool to demonstrate that minorities generally are not represented fairly and reasonably in jury pools in relation to the number of such persons in the community.  *See United States v. Ruiz–Castro*, 92 F.3d 1519, 1527 (10th Cir. 1996) (concluding that defendant failed to establish systematic exclusion of minorities based upon racial makeup of single venire); *United States v. Edwards*, 69 F.3d 419, 437 (10th Cir. 1995) (same).

17

The  Colorado Court of Appeals rejected Applicant's ineffective assistance of

counsel claim in his state post-conviction appeal, reasoning that

> Race constitutes a distinctive group for fair cross-section purposes. *See*
> [state case law citation omitted].  Therefore, [Applicant] alleged facts that
> could satisfy the first part of the *Duren* test. However, [Applicant] failed to
> allege facts that, if proved, would satisfy parts two and three of the *Duren*
> test. He did not allege any facts as to the percentage of African-Americans
> in the community, nor did he allege any facts concerning how Douglas
> County selects citizens for jury service, much less how that selection
> method systematically excludes African-Americans. Therefore, he failed to
> allege facts showing that his counsel was ineffective by failing to comply
> with section [C.R.S.] 13-71-139.

[#14-8, at 10].

I find that the state appellate court's determination of Applicant's claim was

reasonable in light of the evidence presented in the state court proceeding.  Applicant's

failure to present the state trial court with any evidence to show systemic racial disparity

in jury venires in Douglas County is fatal to a constitutional challenge to the cross

section of the jury under *Duren.*  Under such circumstances, the Colorado Court of

Appeals' determination was a reasonable application of *Strickland* because Applicant

did not allege an adequate factual or legal basis to challenge jury pool selection under

federal or state law.  Applicant, therefore, cannot prevail on his sixth claim.

## E.  Claim 8

For his eighth claim, Applicant asserts that he was denied the constitutional right

to counsel at his first appearance before a judicial officer.  Applicant did not raise his

Sixth Amendment claim on direct appeal.  Instead, he asserted it in his state motion for

post-conviction relief, which the trial court denied summarily.  The Colorado Court of

Appeals declined to reach the merits of Applicant's claim on the ground that Applicant

should have raised the issue on direct appeal of his conviction. [#14-8, at 5-6].

Respondents, having conceded previously in their pre-answer response that Applicant exhausted state remedies for this claim, now argue that it is procedurally barred from federal habeas review.  [#39, at 34-35].

A claim that has been procedurally defaulted in the state courts on an independent and adequate state procedural ground is precluded from federal habeas review, unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the federal violation, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *Harris v. Reed*, 489 U.S. 255, 269-70 (1989)).  Applicant asserts in his Traverse that appellate counsel chose not to raise this claim on direct appeal over Applicant's objection. [#44, at 12].  "A habeas petitioner may establish cause for his procedural default by showing that he received ineffective assistance of counsel in violation of the Sixth Amendment."  *Banks v. Reynolds*, 54 F.3d 1508, 1514 (10th Cir. 1995).  However, I need not resolve issues concerning law of the case or potentially complex procedural issues concerning the applicability of Colorado's procedural bar to Applicant's eighth claim for relief because this claim may be more easily resolved on the merits.  *See Cannon*, 383 F.3d at 1159; *Revilla v. Gibson*, 283 F.3d 1203, 1214 (10th Cir. 2002); *Romero v. Furlong*, 215 F.3d 1107, 1111 (10th Cir. 2000).  Because the state appellate court did not consider Applicant's Sixth Amendment claim on its merits, I review the claim de novo.  *Gipson*, 376 F.3d at 1196.

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const.

19

amend. VI.  The Sixth Amendment right to counsel attaches "at or after the time judicial proceedings have been initiated against him 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.'" *Brewer v. Williams*, 430 U.S. 387, 398 (1977) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972) (plurality opinion)); *see also Rothgery v. Gillespie County, Texas*, 554 U.S. 191, 198 (2008) (citing *Kirby*); *Michigan v. Jackson*, 475 U.S. 625, 629, n.3 (1986).  In *Brewer*, the Supreme Court concluded that judicial proceedings commenced when a warrant was issued for the defendant's arrest, the defendant was arraigned on that warrant before a judge, and the defendant was then committed by the court to confinement in jail. *Brewer*, 430 U.S. at 399.

A Sixth Amendment right to counsel violation may be structural or harmless.  A Sixth Amendment structural error exists when "the deprivation of the right to counsel affect[s] – and contaminate[s] – the entire criminal proceeding." *Satterwhite v. Texas*, 486 U.S. 249, 257 (1988); *White v. Maryland*, 373 U.S. 59, 60 (1963) (absence of counsel from preliminary hearing where guilty plea was later admitted at trial); *Gideon v. Wainwright*, 372 U.S. 335, 345 (1963) (total deprivation of counsel throughout entire proceeding); *Hamilton v. Alabama*, 368 U.S. 52, 55 (1961) (absence of counsel from arraignment where defenses not asserted were irretrievably lost).

By contrast, Sixth Amendment violations that do not permeate the entire criminal proceeding are subject to harmless error review.  *See Coleman v. Alabama*, 399 U.S. 1, 9-10 (1970) (denial of counsel at preliminary hearing, a "critical stage" for Sixth Amendment purposes, was subject to harmless error review, where defendant's testimony at preliminary hearing is not admissible against him at trial); *Moore v. Illinois*,

20

434 U.S. 220, 232 (1977) (admission of pretrial, corporeal identification made without counsel present); *Milton v. Wainwright*, 407 U.S. 371, 377-78 (1972) (admission of confession obtained without counsel).

The state court record shows that Applicant was arraigned on the arrest warrant in the County Court of Douglas County on June 27, 2002.  He was advised of his rights, the county court made a finding of probable cause to detain the Applicant, and bond was set.  (*See* State Court R., pldg. file vol. 1, at 15, and June 27, 2002 minute orders). The felony complaint was filed on July 2, 2002.  (*Id.*, at 19).  At that time, defense counsel was appointed for Applicant.  (*Id.*, July 2, 2002 minute orders).

Before trial commenced,  Applicant filed a motion to dismiss the criminal charges asserting a violation of his Sixth Amendment right to counsel.  (*See* State Court R., pldg. file vol. 1, at 180-84; Hrg. Tr. 8/27/04 at 119-20, 127, 135-37).  Applicant maintained that the lack of counsel at his initial appearance resulted in a delayed recognition of the necessity to evaluate his competence to stand trial.  (*Id.*, pldg. file vol. 1, at 182).  He also asserted that his bond was set unreasonably high, so that he was unable to secure his release.  As a result, Applicant argued, he could not earn money to retain a private attorney, hire private doctors to evaluate his competency to stand trial, or demonstrate to the trial court that he could function in society and should be considered probation eligible." (*Id.*; *see also* Hrg. Tr. 8/27/04 at 119-20).  The state trial court denied Applicant's motion to dismiss, finding that Applicant "had counsel throughout the proceedings," and, therefore, had failed to establish a basis for dismissal. (*Id.* at 148).

Assuming, without deciding, that the Sixth Amendment right to counsel attached

21

at Applicant's arraignment on the arrest warrant on June 27, 2002, I find that any

violation of Applicant's Sixth Amendment rights that resulted from the failure to provide

counsel at his initial appearance is amenable to harmless error review.  *See Coleman*,

399 U.S. at  9-10.  On federal habeas review, I apply the harmless error standard

articulated in *Brecht v. Abrahamson*, 507 U.S. 619, 637–38, (1993).  *See Fry v. Pliler*,

551 U.S. 112, 121–22 (2007) (holding that the *Brecht* standard governs in federal

habeas cases regardless of whether state courts recognized the error and applied any

harmless error review*).*  Under *Brecht,* a federal habeas petitioner is not entitled to relief

for a constitutional violation that occurred during a state criminal proceeding unless "the

. . . error [at issue] 'had substantial and injurious effect or influence in determining the

jury's verdict.'" 507 U.S. at 623 (quoting *Kotteakos v. United States,* 328 U.S. 750, 776

(1946)).  Put differently, the  constitutional error at issue must have "have resulted in

'actual prejudice'" *Brecht*, 507 U.S. at 637.

     There is no evidence that Applicant made any statements at his initial

appearance on June 27, 2002, that were later used against him at trial, nor does

Applicant contend as much.  No formal charges were filed against Applicant at his

arraignment, and, therefore, Applicant was not required to enter any defenses or to

enter a plea.  The state court record shows, and the trial court found, that Applicant was

provided counsel beginning on July 2, 2002, and at every stage of his criminal

proceeding until he waived his right to appointed counsel.  From that point forward, the

trial court appointed advisory counsel to assist Applicant at trial.

     Applicant's assertion that the lack of counsel at his initial appearance had a

negative impact on his competency proceedings is refuted by the state court record.  On

22

July 23, 2002, less than thirty days after Applicant's initial appearance, his attorney filed a "Motion for Competency Examination and Hearing." (State Court R., pldg, file vol. 1, at 27-28).  On December 12, 2002, the county court found that Applicant was not competent to proceed.  (*Id.*, Hrg. Tr. 12/12/02 at 3-5, 8-14, 29-35, 51-53).  The county court ordered that Applicant be committed to the Department of Human Services for "further treatment and hopefully the restoration of competency in this case." (*Id.* at 53).  At a hearing on September 25, 2003, the county court found Applicant competent to proceed to trial.  (*Id.*, pldg, file vol. 1, minute orders).  Although Applicant continued to request further competency proceedings, the trial court found that it "was clear . . . based upon the Court's observations of him and the Court's review of the medical records in this case, that [Applicant] is, in fact, competent." (*Id.*, Hrg. Tr. 8/27/04 at 20-21, 23).  Applicant has not established that the appointment of counsel five days after his initial appearance prejudiced him in the competency proceeding or at trial, given the trial court's final determination that he was competent to stand trial.

Furthermore, the failure to appoint counsel at Applicant's initial appearance did not prejudice Applicant's ability to post bond.  Applicant's efforts to reduce his bond after counsel was appointed were unsuccessful.  *See*, *e.g.* State Court R. pldg. file vol. 1, 11/3/03 minute order.

I find that even if a Sixth Amendment violation occurred at Applicant's arraignment on the arrest warrant, there is no possibility that the error had a substantial and injurious effect or influence on Applicant's competency proceeding or in determining the jury's verdict at trial for the reasons discussed above.  Applicant therefore cannot prevail on his eighth claim for relief.

### F. Claim 9

Finally, Applicant asserts in claim nine that his trial counsel was ineffective in conspiring with the prosecutor to withhold exculpatory evidence and in assisting law enforcement witnesses to commit perjury at his trial. Applicant more fully articulated the basis for this claim in his state motion for post-conviction relief filed pursuant to Colo. Crim. P. Rule 35(c). He asserted in his Rule 35(c) motion that trial counsel failed to disclose to him the contents of an internal affairs investigation report which revealed that Applicant was arrested because he matched the description of a perpetrator who committed a similar offense on an earlier date at the Southglenn shopping mall. (*See* State Court R., pldg. file vol. 3, at 550). Sheriff's deputies testified at Applicant's trial that when they stopped Applicant at Park Meadows Mall following commission of the crimes, they did not have any information that he was involved in prior criminal activity. (*Id.*, Trial Tr. 8/31/04 at 28-30, 149-50). Applicant argued in his post-conviction motion that he was prejudiced at trial by the officers' failure to testify honestly. (*Id.*, pldg. file vol. 3, at 554-55). Applicant further asserted that the perjured testimony was a cover up for racial profiling. (*Id.* at 557; *see also* [# 14-6, at 16]). The state trial court denied the motion for failure to allege adequate legal or supporting factual grounds. (*Id.*, pldg. file vol. 4, at 712). On appeal, the Colorado Court of Appeals likewise found no merit to the claim:

> [Applicant] alleged that, . . . before his arrest, the [arresting] officers had received radio transmissions from Southglenn Mall security personnel asking them to stop [Applicant] because he matched the description of a suspect in a recent robbery there. Although defense counsel knew of this evidence, she and the prosecutor agreed not to introduce it at trial because of its obvious potential to prejudice [Applicant]. Both officers testified at trial that they did not have any information that defendant had

been involved in any kind of criminal activity when they initially approached him.

[Applicant's] motion failed to articulate how evidence that the officers had been contacted by Southglenn Mall security personnel was in any way exculpatory. His contention that it somehow would have supported his theory that the officers' attempt to question him was racially motivated is illogical. Thus, [Applicant] failed to allege facts showing that his counsel's decision not to present evidence of the radio traffic was anything other than a reasonable exercise of professional judgment.

[#14-8, at 7-8].

The state court record demonstrates that Applicant's counsel and the prosecutor agreed to withhold evidence from the jury that tended to suggest Applicant's commission of a prior bad act.  Contrary to Applicant's assertion, such evidence tended to be *inculpatory*, not exculpatory.  Because trial counsel's decision not to disclose the information to the jury fell within the realm of reasonable trial strategy, the state appellate court's determination comports with *Strickland*.  Furthermore, Applicant has not shown how the outcome of his trial would have been different had the sheriff's deputies testified about the radio transmission they received from Southglenn mall security personnel prior to Applicant's arrest.  The jurors were just as likely to convict Applicant had they known that he fitted the description of the perpetrator of a similar crime committed at a different shopping mall.  Applicant's speculation that trial counsel withheld this information from the jury because the true reason for Applicant's arrest was racial profiling is not supported by any evidence and is otherwise illogical as noted by the state appellate court.  Accordingly, Applicant cannot prevail on his ninth claim.

## IV. ORDERS

**THEREFORE, IT IS ORDERED** as follows:

1. That the amended Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 [Docket # 10] filed December 28, 2010, by Applicant Robert Wayne Robinson is DENIED;

2. That this case is DISMISSED WITH PREJUDICE; and

3. That there is no basis on which to issue a certificate of appealability pursuant to 28 U.S.C. § 2253(c).

Dated at Denver, Colorado, November 3, 2011.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge